KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in finding a used car dealership liable for arranging the sale of an automobile and allegedly making a false representation about the automobile.
Kandace Newbaker (hereinafter referred to as plaintiff) filed suit against Eugene D. Lanier, Inc., d/b/a Acadian Toyota (hereinafter referred to as Acadian) and Betty Zeno (hereinafter referred to as Zeno) for reimbursement of the purchase price of a 1970 model Volkswagen due to redhibitory defects allegedly present and not disclosed at the time of the sale of the vehicle to plaintiff. Additionally, plaintiff sought reimbursement for the cost of seat covers for the Volkswagen which were allegedly promised but not delivered. Alternatively, plaintiff sought a reduction of the purchase price equal to the cost of repairing the defects allegedly existing at the time of sale.
After a trial on the merits, the trial court rendered judgment in favor of plaintiff and against Acadian, as the undisclosed agent for Zeno in the sale of the automobile, finding that Acadian had failed to disclose its agency to plaintiff and had exceeded the authority given by Zeno by misrepresenting the condition of the automobile. The trial court found Acadian liable to plaintiff for exceeding its authority .as agent in ac *357 cordance with LSA-C.C. Art. 3013. The trial court then rendered judgment in favor of plaintiff and against Acadian for the purchase price of the vehicle, damages, and attorney’s fees. The trial court also dismissed all claims against Zeno, finding that she was not a party to Acadian’s fraudulent misrepresentation. Defendant, Acadi-an, suspensively appeals this judgment, contending that the trial court erred in finding Acadian liable to plaintiff. We reverse.
FACTS
In early September, 1984, defendant, Betty Zeno, made arrangements to purchase a new vehicle from defendant, Acadi-an. Zeno made a $100.00 down payment and chose the particular type and model vehicle she wanted which was then ordered. Zeno’s decision to purchase a new car was based in part on Acadian’s assurances that they would allow her from $500.00 to $700.00 on trade of her old Volkswagen. Their decision as to the amount of trade in was based in part on an inspection of the Volkswagen performed by Acadian’s mechanic. An agreement was reached that up until the time that Zeno’s new car arrived, Zeno would attempt to sell the Volkswagen herself in order to receive a higher price than that which would be allowed by Acadian on a trade in. If Zeno was unable to sell the Volkswagen by the time her new car arrived, Acadian would accept the Volkswagen as a trade in within the range of the agreed on trade in allowance. Meanwhile, Zeno was to use the Volkswagen as transportation until her new car came in.
Shortly thereafter, on September 24, 1984, Gail Bellais (hereinafter referred to as plaintiff’s mother), the mother of plaintiff, Kandace Newbaker, telephoned various car dealers in the Lafayette area including defendant, Acadian, attempting to locate a used car for plaintiff. When plaintiff’s mother telephoned Acadian she spoke with a used car salesman, Pat Costello (hereinafter referred to as Costello). Costello informed her that he had no cars available in plaintiff’s price range of not over $1,500.00, but that he had a car her daughter might want coming in on a trade. Plaintiff’s mother advised Mr. Costello to call Wednesday if the car was in because her father, who was to pay for the car, would be in town only on Wednesday.
On Wednesday morning, September 26, 1984 Costello called plaintiff’s mother and advised her that the 1970 Volkswagen would be at Acadian that afternoon and that he thought $900.00 would be needed to purchase the ear. Plaintiff, plaintiff’s mother, plaintiff’s grandfather, and plaintiff’s uncle went to Acadian’s used car lot and discussed the purchase of the Volkswagen with Costello. At that time Zeno was not present with the Volkswagen as she had to return home to obtain her certificate of title to the automobile. Costello allegedly advised plaintiff that the car had a paint job less than a year old, a new muffler, new tires and a rebuilt engine, and that new seats or seat covers had been ordered and would go with the car. Zeno arrived in her Volkswagen at the premises of Acadian where it was inspected by plaintiff and her family members. A sale was agreed to. A bill of sale was made out with Zeno shown as seller and plaintiff as buyer and the certificate of title was signed by Zeno transferring title to the car to plaintiff. Plaintiff’s grandfather made a check out for $900.00 payable to the order of Zeno. This check was deposited in Zeno’s personal checking account.
Plaintiff drove the Volkswagen without incident until sometime in October, 1984 when she drove to Biloxi, Mississippi and had to replace an engine head gasket and other parts at a cost of $209.46. She drove the vehicle back to Lafayette and continued to drive it to and from work and school until early January^ 1985 when she had problems starting the vehicle. Mechanical inspection revealed a blown head gasket, worn piston cylinders, crank, bushings, and block and burned bearings. The vehicle has sinee been inoperative.
Plaintiff filed suit on March 1, 1985 in the City Court of Lafayette, Louisiana, *358 against Acadian and Zeno, alleging her purchase of the Volkswagen from either Aca-dian or Zeno, that the car was defective because of the problems with the automobile, and that the cost of repairs would exceed the value of the automobile. Plaintiff also alleged in her petition that both Zeno and Acadian assured her at the time of the sale that the vehicle was in “top working condition”. Plaintiff sought the return of her purchase price plus reimbursement for the cost of the seat covers promised but not delivered. Alternatively, she prayed for a reduction in the purchase price of the vehicle for defects existing but not disclosed at the time of sale. Plaintiff also prayed for attorney’s fees, alleging actual or constructive knowledge of Zeno and Acadian concerning the defects. Zeno answered and denied plaintiff’s claim and filed a demand against Acadian for contribution and/or indemnity for any sums she might be cast in judgment to plaintiff. Acadian answered and denied plaintiff’s claim and also answered denying Zeno’s demand. Plaintiff, during the trial, was permitted to orally amend her pleadings and introduce evidence on the issue of her claim for damages for embarrassment, humiliation, upset, inconvenience and mental anguish. A formal written amendment was ordered and later filed in which plaintiff sought damages of $1,000.00.
At a trial on the merits held on June 20, 1985, several witnesses appeared on behalf of plaintiff including plaintiff, plaintiff’s mother, plaintiff’s grandfather, and a mechanic who inspected her vehicle after it became completely inoperative. Plaintiff testified that Acadian’s salesman, Pat Costello, represented that the car had a rebuilt engine and that Acadian’s mechanics had looked at the engine.
Zeno also testified. She stated that she told Costello about the new paint job, tires, muffler and seat covers but never discussed a rebuilt engine with him.
Acadian called Eugene D. Lanier, the owner and president of Acadian, as, a witness. Lanier testified that Costello was an employee of Acadian at the time of the sale, but that he had never given Costello authority to conduct business selling cars for persons other than Acadian. Costello was not called to testify.
At the conclusion of trial the matter was taken under advisement. The trial court rendered judgment finding defendant, Aca-dian, liable to plaintiff for the purchase price, awarding plaintiff reimbursement of $209.46 for repairs, $250.00 for inconvenience and loss of use of the automobile, and attorney’s fees in the amount of $750.00. All claims against defendant, Zeno, were dismissed with prejudice, the court finding that Zeno was not a party to Acadian’s misrepresentation concerning the condition of the automobile. Zeno’s demands against Acadian were also dismissed with prejudice.
Defendant, Acadian, suspensively appeals the trial court judgment, assigning eight errors in the trial court judgment, contending that Acadian is not liable to plaintiff. Plaintiff answers this appeal seeking an increase in the award for inconvenience from $250.00 to $750.00, addition of a $114.00 repair bill not included in the trial court judgment, $3.00 per day for the costs of storage of the Volkswagen pending the outcome of this matter, and an award of $2,000.00 attorney’s fees for answering the appeal. We will not discuss all of Acadian’s assignments of error in view of our decision on the issues discussed hereafter.
PLAINTIFF’S RIGHT TO RECOVER FROM ACADIAN
LSA-Civil Code Articles 2520 through 2548 govern redhibitory actions. LSA-C.C. Art. 2520 defines redhibition as:
“... the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
Also, LSA-Civil Code Article 2529 states:
*359 “A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase.” (Emphasis added.)
This remedy is available even if the lack of such quality does not otherwise constitute a vice or defect. Fusilier v. Ardoin, 266 So.2d 531 (La.App. 3 Cir.1972).
An action in redhibition contemplates the existence of a sale and an action in redhibition is good only against the seller. LSA-C.C. Arts. 2531, 2539, 2545. Even assuming redhibitory defects in the Volkswagen, the issue of Acadian’s liability would turn on whether or not Acadian was the “seller” within contemplation of the redhibition articles of the Louisiana Civil Code.
In order for Acadian to have been the seller of the Volkswagen to plaintiff, Acadian would have to own or possess an ownership interest in the Volkswagen immediately prior to the sale. Otherwise Acadian could not be liable to plaintiff in redhibition. Josephs v. Austin, 420 So.2d 1181 (La.App. 5 Cir.1982), writ den., 427 So.2d 870 (La.1983). Acadian had no such ownership interest. If defendant, Acadian, was the owner and seller of the Volkswagen, the defendant, Zeno would have had to convey ownership of the vehicle to Acadian. The evidence is clear that no such conveyance occurred. While the price of the new vehicle which Zeno was purchasing from Acadian could have been paid in part by the value of the trade in to be received by Zeno from Acadian for her Volkswagen, it was unknown prior to the sale of Zeno’s Volkswagen to plaintiff whether the Volkswagen would be traded in or whether Zeno would sell the car herself and apply the proceeds from her sale to the purchase price of the new car. If Zeno was to trade in her Volkswagen as part of the down payment on her new vehicle, the trade in value had not been determined, as Acadian had only stated that they were willing to give Zeno from $500.00 to $700.00 on a trade in for her Volkswagen. Since no agreement existed on the thing and the price, there was never a sale between Zeno and Acadian, and Aca-dian never owned the Volkswagen. LSA-C.C. Art. 2439. Even if, for purposes of the sale of the automobile, Acadian is considered to be the agent of Zeno, a suit for redhibition can only be brought against the seller and not the agent of the seller. Castille v. Folck, 338 So.2d 328 (La.App. 3 Cir.1976). For these reasons we find that Acadian could not have been liable to plaintiff in redhibition.
The trial court, in its reasons for judgment, found Acadian liable to plaintiff under a theory of agency. The trial court found that Acadian, through its agent, Costello, was the undisclosed agent for Zeno; that Acadian misrepresented that the engine in the Volkswagen had been rebuilt, and that Acadian, pursuant to LSA-C.C. Art. 3013, as an agent was liable to plaintiff as it had exceeded its authority and failed to disclose its status as an agent and its principal’s identity. Acadian assigns as error the trial court’s finding that it was the agent of Zeno or that it was the undisclosed agent of Zeno in connection with the sale of the Volkswagen.
The trial court cited Martin Home Center, Inc. v. Stafford, 434 So.2d 673 (La.App. 3 Cir.1983) for the proposition that failure to expressly disclose ones agency relationship and acting beyond one’s authority results in an agent’s personal liability. Such liability, however, does not extend to an action in redhibition against an agent where he possesses no property interest in the item sold. Josephs v. Austin, supra. The trial court also cited Wiltz v. Dixie Auto Sales, Incorporated, 315 So.2d 811 (La.App. 3 Cir.1975) for the proposition that an auto dealer may be liable in redhibition for the sale of an auto. In Wiltz, supra, however, the car dealer was the seller and the car dealer had held himself out as the seller and in fact was listed as such on the bill of sale. In the instant case Acadian was not listed as the seller on the bill of sale and plaintiff should have been aware that she was purchasing the car not from Acadian but direct from *360 Zeno. Even if Acadian was the agent of Zeno, it can hardly be argued that the relationship was undisclosed, since the bill of sale and conveyance of the certificate of title were from Zeno to plaintiff and the check for payment of the purchase price of the Volkswagen was made payable by plaintiffs grandfather to Zeno. We find merit in Acadian’s assignments of error that the trial court erred in finding Acadian liable to plaintiff either in redhibition or as the undisclosed agent of Zeno who had exceeded its authority in the sale of the Volkswagen automobile.
PLAINTIFF’S OTHER REMEDIES
Since we have determined that Acadian is not liable to plaintiff in redhibition or agency, we must now decide whether plaintiff’s pleadings state facts sufficient to constitute a cause of action under any other remedy. A possible tort remedy might exist against Acadian for negligent misrepresentation. See LSA-C.C. Art. 2315; Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979); Dohmann v. United Gas Pipe Line, 457 So.2d 307 (La.App. 3 Cir.1984); Beal v. Lomas and Nettleton Co., 410 So.2d 318 (La.App. 4 Cir.1982).
An action for negligent misrepresentation requires existence of a legal duty on the part of defendant either to supply correct information or not to supply incorrect information, a breach of that duty, and resulting damage to plaintiff. Branton Insulation, Inc. v. Standard-Taylor Industries, Inc., 376 So.2d 178 (La.App. 4 Cir.1979); Beal v. Lomas and Nettleton Co., supra. Allegations of fraud must be alleged with particularity. LSA-C.C.P. Art. 856.
We find that plaintiff’s pleadings, given a liberal interpretation, could be interpreted as stating facts sufficient to constitute a cause of action against Acadian for negligent or fraudulent misrepresentation. LSA-C.C.P. Arts. 865, 891. In her petition plaintiff alleged that she was assured by Acadian, through its employee, Costello, that the Volkswagen was in “top working condition”.
When plaintiff attempted to elicit testimonial evidence at trial regarding Aca-dian’s representations concerning the condition of the engine in the car, Acadian timely objected to introduction of these representations. The objection was overruled. Acadian complains of this evidentiary ruling on appeal as an improper expansion of the pleadings. Evidence of the condition of the engine, or representations of the condition of the engine, in the Volkswagen at the time of the sale was properly admissible to show whether or not the car was in “top working condition” at the time of the sale. Plaintiff contends that Costello’s representations that the engine was “rebuilt” were fraudulent. The record clearly shows that Zeno had never told this to Costello. Costello apparently obtained this information from one of Acadian’s mechanics who had inspected the Volkswagen in connection with valuing it for the purpose of a trade in. No evidence was presented to show that the Volkswagen did not have a rebuilt engine as represented by Costello. Plaintiff’s own mechanic and expert witness, Joseph Broussard, testified that in his opinion he could only conclude that the car’s engine had not been rebuilt within a period of four to six months prior to his inspection in January, 1985. Thus plaintiff’s expert testimony was only that the car’s engine had not been recently rebuilt. There is absolutely no evidence to indicate that Costello made any representations to plaintiff or her relatives as to the date that Acadian’s mechanics believed that the engine had been rebuilt. Plaintiff contends that her decision to purchase the car was based upon the recommendation of her grandfather, Mr. Everrett Hines. Mr. Hines testified that his recommendation to plaintiff that she purchase the car was based on the information given to him by Costello that the engine in the car had been rebuilt. However, all of the testimony introduced at the trial of this matter establishes that Costello never attempted to imply to anyone that the engine had been recently rebuilt. The cross examination of Mr. Hines on this point was as follows:
*361 “Q. Mr. Costello didn’t tell you when the engine of that car had been rebuilt, did he?
A. No, just — he just said it had a rebuilt engine.
Q. So, he — you didn’t infer from that, that it had been the day before? It could have been in June or July, or sometime around that time?
A. True.
Q. Within a few months?
A. True, but — a 1970 car, even if the engine had been rebuilt, you know, a year ago — you know, I didn’t assume when it had been rebuilt. He didn’t say.
Q. Within the last year is what you assumed?
A. I didn’t assume anything. He just flat out said ‘It has a rebuilt engine’.”
There is no evidence to show that Mr. Costello ever intended to convey anything to plaintiff or her relatives other than the information he had obtained from the Aca-dian mechanic. There is no evidence to indicate that at the time of the inspection of the Volkswagen by the Acadian mechanics that the car did not appear to have a rebuilt engine. For the trial court to conclude that Acadian, through Costello, had made fraudulent misrepresentation by saying that the Volkswagen had a rebuilt engine at the time of the sale because it was later determined that the engine had not been recently rebuilt is an abuse of the factfinder’s discretion. For these reasons we find that the trial court was clearly wrong and manifestly in error in finding that Costello made a false representation that the Volkswagen had a rebuilt engine. We do not find that the evidence introduced at trial as to Costello’s representations concerning that the engine in the Volkswagen had been rebuilt, constitute negligent or fraudulent misrepresentation.
For these reasons we also do not find that the relief plaintiff-appellee seeks in her answer to the appeal should be granted and such relief is hereby denied. As the plaintiff has not appealed the trial court’s dismissal of plaintiff’s suit against Zeno, her liability to plaintiff is not at issue in this appeal and the judgment as to her is now final. As Zeno has not appealed the trial court’s dismissal of her claim against Acadian, that judgment is also now final.
For the foregoing reasons the judgment of the trial court is reversed, vacated, and set aside. Judgment is entered in favor of defendant-appellant dismissing plaintiff-ap-pellee’s suit, with prejudice, at her cost. All costs of this appeal are taxed to the plaintiff-appellee.
REVERSED AND RENDERED.